UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LIONEL BUTLER,
    *Plaintiff*,

v.

MERRICK B. GARLAND, *et al.*,
    *Defendants*.

Case No. 1:22-cv-01146 (ACR)

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Lionel Butler brings this action against Defendants Attorney General Merrick B. Garland; the United States Department of Justice; and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Plaintiff's operative complaint alleges disparate treatment based on his race. Dkt. 1 ¶¶ 30–42. Also before the Court are Plaintiff's motions for leave to file first and second amended complaints alleging sex discrimination and violations of the Rehabilitation Act of 1973, 29 U.S.C. § 791. Dkt. 25-1 ¶¶ 38–47; Dkt. 26-1 ¶¶ 30–48, 59–65.

    For the reasons explained below, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings, Dkt. 23, and **DISMISSES** Plaintiff's Complaint, Dkt. 1, without prejudice. The Court also **DENIES** Plaintiff's motions to file first and second amended complaints, Dkts. 25 & 26; and **DENIES AS MOOT** Defendants' Renewed Motion for Judgment on the Pleadings, Dkt. 28.

1

I.      BACKGROUND

   A. Factual Background

For purposes of evaluating the Agency's motion for judgment on the pleadings, the Courts takes from the Complaint and accepts as true the following allegations. *Payne v. District of Columbia*, 741 F. Supp. 2d 196, 207 (D.D.C. 2010).

Plaintiff, an African American male, began working for the federal government in March 2011 and for ATF in June 2015. Dkt. 1 ¶ 5. In October 2018, he began working as a Human Resources Specialist at ATF. *Id.* He contends that starting in October 2018, his supervisors began taking adverse employment actions against him based on his race.[1] *Id.* ¶ 6. He alleges the following:

First, Plaintiff's white-male supervisor, Edward Maguire, *id.* ¶ 5, denied his sick leave requests from January 28, 2019, through February 26, 2019, *id.* ¶ 15. Maguire required Plaintiff to provide doctor's notes before taking sick days despite "the Agency's policy that a doctor's note was not required for . . . less than three days of absence" and the fact that Plaintiff "did not have any prior history of abusing sick leave." *Id.* Plaintiff alleges that he was treated differently from other employees because Maguire wanted "to make an example out of him." *Id.* ¶ 17. When Plaintiff was allowed to take sick leave, his supervisors closely monitored his whereabouts, "going so far as to . . . attempt to determine if" Plaintiff, who also worked as an NCAA Division I college basketball official, "was officiating at a college basketball game" while on sick leave. *Id.* ¶¶ 7, 17.

---

[1] In an order dated August 21, 2023, the Court dismissed the Complaint as to all events before January 23, 2019. Min. Order (Aug. 21, 2023). This opinion focuses on allegations after that date.

Second, around February 2019 Maguire revoked Plaintiff's telework privileges "due to the volume of work that [Plaintiff] had accumulated." *Id.* ¶ 18. Plaintiff "was the only member of . . . Maguire's team who was not allowed to telework." *Id.* ¶ 20. Before Maguire revoked his telework privileges, Plaintiff "was able to complete more work remotely than he would have otherwise, due to the flexibility of the remote work." *Id.* ¶ 18.

Third, on February 7, 2019, Plaintiff received a formal letter of reprimand from Maguire. *Id.* ¶ 21. Plaintiff does not explain the letter's contents, but the Court deduces that it related to a subsequent meeting with Kathryn Green, Plaintiff's second-line supervisor, about his failure to "complete qualifications on a particular set of [job] announcements." *Id.*

Fourth, on March 8, 2019, Plaintiff's supervisor "suspended [his] participation in the Health Improvement Program," a benefit that allows employees to take a few hours per week to exercise during the workday. *Id.* ¶ 22. Although the Health Improvement Program was offered to all employees, *id.* ¶ 23, Maguire told Plaintiff that he could not use the benefit because Plaintiff had "work to complete." *Id.* ¶ 22.

Fifth, Plaintiff's supervisors repeatedly denied his annual leave requests between January 23, 2019, and March 15, 2019. *Id.* ¶ 26. Plaintiff was the only employee denied annual leave during the relevant period. *Id.*

Sixth, Maguire placed Plaintiff on administrative leave for ten days from March 22, 2019, through April 1, 2019. *Id.* ¶ 27. The Complaint does not state the perceived or offered reason for the administrative leave. *See id.*

Finally, on April 9, 2019, management referred Plaintiff to the Internal Affairs Division for investigation for "fraud, waste, and abuse of sick leave." *Id.* ¶ 28. The investigation was, according to Plaintiff, "an attempt to humiliate and discredit his federal government career by

3

stating that he was not sick when taking sick leave and/or implying that he tried to mislead his supervisors." *Id.* Plaintiff does not, however, allege that the investigation caused him to lose financial or professional opportunities. *See generally id.*

"Fearing the Agency would terminate his employment," Plaintiff resigned on July 5, 2019. *Id.* ¶ 29.

### B. Procedural Background

Plaintiff filed an administrative charge of discrimination alleging he was subject to the above actions because of his race and sex. Dkt. 29. The ATF issued a final agency decision denying Plaintiff's charge, which Plaintiff appealed to the Equal Employment Opportunity Commission ("EEOC"). Dkt. 1 ¶ 29. On January 26, 2022, the EEOC denied Plaintiff's appeal and affirmed the ATF's findings. *Id.*

Plaintiff then filed this employment action on April 26, 2022. *Id.* The Complaint claims racial discrimination under Title VII of the Civil Rights Act of 1964. *Id.* ¶¶ 30–42. Initially, Defendants moved to dismiss only parts of Plaintiff's claims. Dkt. 12. The Court granted Defendants' Motion to Dismiss in part, dismissing claims to extent they were based on events before January 23, 2019, for failure to timely exhaust administrative remedies and dismissing Plaintiff's hostile work environment claim for failure to state a claim. Min. Order (Aug. 21, 2023). The Court rejected Defendants' argument that the denial of Plaintiff's telework privileges and his suspension from the Health Improvement Program were *de minimis* harms. *Id.* Following the Court's ruling on Defendants' Motion to Dismiss, seven of Plaintiff's allegations remain. *See supra* Section I.A.

On January 9, 2024, Defendants moved for judgment on the pleadings because Plaintiff's remaining allegations do not support an inference of discrimination based on race. Dkt. 23 at 1.

Rather than file an opposition to Defendant's motion and despite having requested and received an extension to do so, Min. Order (Feb. 1, 2024), Plaintiff moved for leave to file an amended complaint adding a claim under the Rehabilitation Act. Dkt. 25 at 2. Plaintiff then moved to file a second amended complaint adding a sex discrimination claim. Dkt. 26 at 2. Defendants oppose Plaintiff's motions for leave to amend. Dkt. 27.

## II.     LEGAL STANDARD

When a party moves to amend a complaint, the Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, a district court may, within its discretion, deny the motion where the amendment "would be futile . . . or where the pleading as amended would 'not survive a motion . . . for judgment on the pleadings.'" *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 197 (D.D.C. 2011) (quoting *Jung v. Ass'n of Am. Med. Colls.*, 226 F.R.D. 7, 9 (D.D.C. 2005)).

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." To prevail, the moving party must establish that "no material fact is in dispute and that it is entitled to judgment as a matter of law." *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 12 (D.D.C. 2008) (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992)). Judgment on the pleadings is only appropriate when there are no "issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Dist. No. 1 v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (cleaned up).

The Court may rely on "'facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take

judicial notice.'" *Yancey v. District of Columbia*, 991 F. Supp. 2d 171, 175 (D.D.C. 2013) (quoting *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 283 (D.D.C. 2012)). That said, a court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III.  ANALYSIS

#### A.  Motions for Leave to Amend the Complaint

Rather than oppose Defendants' Motion for Judgment on the Pleadings, Plaintiff twice moved to amend his Complaint. Dkts. 25 & 26. The First Amended Complaint adds a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 791, alleging that Defendants not only failed to reasonably accommodate Plaintiff's migraines, but also instituted an ad hoc policy requiring Plaintiff, and no one else, to present a doctor's note before taking sick leave. Dkt. 25-1 ¶¶ 15–17. The Second Amended Complaint adds a sex discrimination claim under Title VII. Dkt. 26-1 ¶¶ 30–37. Plaintiff did not make any amendments addressing his race discrimination claims.

##### 1.  First Amended Complaint

An amendment is futile if a plaintiff does not meet an exhaustion requirement. *S.S. by and through Street v. District of Columbia*, 71 F. Supp. 3d 1, 4–5 (D.D.C. 2014). The Rehabilitation Act requires individuals to exhaust their administrative remedies, allowing federal agencies the opportunity to handle matters internally before facing suit in federal court. *Williams v. Brennan*, 320 F. Supp. 3d 122, 129 (D.D.C. 2018). Plaintiff's EEO charge did not claim discrimination based on disability or physical health, Dkt. 29, and he does not allege that he attempted to exhaust his claim in any other way. *See* Dkt. 25-1 ¶ 29. Because Plaintiff did not

exhaust his administrative remedies, amendment on that basis is futile.[2]  The Court therefore **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint, Dkt. 25.

### 2.  *Second Amended Complaint*

Plaintiff's Motion for Leave to File a Second Amended Complaint, Dkt. 26, fares no better.  On top of the unexhausted Rehabilitation Act claim, the Second Amended Complaint tacks sex discrimination allegations to the existing Title VII claim.  Dkt. 26-1 ¶¶ 30–48.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.  To establish a prima facie case of discrimination under Title VII, Plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Pierre v. Bennett*, 686 F. Supp. 3d 1, 7 (D.D.C. 2023) (quoting *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)).  While a plaintiff need not plead each element of a prima facie case of discrimination to survive a motion for judgment on the pleadings, *see Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014)*,* he still must allege facts that if accepted as true would make the discrimination claim plausible, *Jones v. Castro*, 168 F. Supp. 3d 169, 178 (D.D.C. 2016).

Plaintiff adequately alleges his membership in a protected class (male) in his Complaint and EEO charge, Dkt. 1 & 29; and that he suffered adverse employment actions, Min. Order

---

[2] Where, as here, a complaint refers to an EEO complaint, the Court may consider the EEO complaint without converting a 12(c) motion into a motion for summary judgment.  *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 31 n.11 (D.D.C. 2019); *Hudson v. Child.'s Nat'l Med. Ctr.*, 645 F. Supp. 2d 1, 5 n.5 (D.D.C. 2009).

(Aug. 21, 2023). His Title VII claim fails, however, because he does not allege facts supporting an inference of sex discrimination.

Plaintiff does not allege that female employees received better treatment because of their sex. He does not allege that his supervisors made discriminatory statements about his sex or provide statistics showing that his employer treated men and women differently. Nor does he make any other allegation connecting the adverse employment actions to his sex. Rather, the Complaint states his sex and those of his supervisors without ever alleging that sex was the basis for his distinct treatment. *See* Dkt. 1 ¶¶ 3, 5, 8, 12. Because adverse actions without facts that if accepted as true would make the discrimination claim plausible cannot survive a motion for judgment on the pleadings, the Court **DENIES** Plaintiff's Motion to File a Second Amended Complaint, Dkt. 26, as futile.

### B. Motion for Judgment on the Pleadings

Having denied leave to amend, the Court turns to Defendants' Motion for Judgment on the Pleadings, Dkt. 23, as to the operative complaint—Plaintiff's original complaint, Dkt. 1. Defendants contend that they are entitled to judgment on the pleadings because Plaintiff does not connect his remaining allegations to race. Dkt. 23 at 1. The Court agrees with Defendants. Having reviewed the operative complaint carefully the Court has found nothing "showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

As with his sex discrimination claim, Plaintiff adequately alleges his membership in a protected class (African American) and that he suffered adverse employment actions. Again, however, he does not allege any fact supporting an inference of discrimination. *See supra* Section III.A.2. The Complaint states his race and those of his supervisors, but he does not trace his allegations to those characteristics. *See e.g.*, Dkt. 1 ¶¶ 5, 7–8, 10, 12, 16, 22, 26, 28. Instead,

Plaintiff either concedes that he does not know why the Agency took a particular action or simply provides his supervisors' stated non-discriminatory reasons for the action (e.g. workload and poor performance).  *Id.* ¶¶ 10, 16, 22.  The fact that Plaintiff, a member of a protected class, was treated differently from other employees does not automatically create a plausible employment discrimination claim.  *Turner v. Shinseki*, 824 F. Supp. 2d 99, 118–19 (D.D.C. 2011).

Because Plaintiff does not allege facts tying the adverse employment actions to his race, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings, Dkt. 23.

### IV.    CONCLUSION AND ORDER

For these reasons, the Court **GRANTS** Defendants' Motion for Judgement on the Pleadings, Dkt. 23; **DISMISSES** Plaintiff's Complaint, Dkt. 1, without prejudice; **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint, Dkt. 25; **DENIES** Plaintiff's Motion for Leave to File a Second Amended Complaint, Dkt. 26; and **DENIES AS MOOT** Defendants' Renewed Motion for Judgment on the Pleadings, Dkt. 28.

This is a final appealable order.  *See* Fed. R. App. P. 4(a).

**SO ORDERED.**

Date: August 2, 2024

_____
ANA C. REYES
United States District Judge